UNITED STATES. DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SAFETY SPECIALTY INSURANCE COMPANY, and SAFETY NATIONAL CASUALTY COMPANY, | |
| Plaintiff, | |
| v. | No. |
| COUNTY OF GENESEE by its BOARD OF COMMISSIONERS; DEBORAH CHERRY; THOMAS A. FOX; and TAMMY PUCHLAK, as trustee of the WALTER PUCHLAK REVOCABLE TRUST AGREEMENT DATED FEBRUARY 24, 2010, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COME the Plaintiffs SAFETY SPECIALTY INSURANCE

COMPANY ("Safety Specialty"), and SAFETY NATIONAL CASUALTY

COMPANY ("Safety National"), by their attorneys, Richard C. Rezie, Adam P.

Sadowski, John D. Hackett, and Christopher C. Cassidy, and for their Complaint

for Declaratory Judgment against Defendants, COUNTY OF GENESEE by its

BOARD OF COMMISSIONERS ("Genesee County"), DEBORAH CHERRY

("Cherry"); THOMAS A. FOX ("Fox"); and TAMMY PUCHLAK ("Puchlak"), as

trustee of the WALTER PUCHLAK REVOCABLE TRUST AGREEMENT DATED FEBRUARY 24, 2010, pursuant to 28 U.S.C. §§2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, state as follows:

## INTRODUCTION

1.     This is an action for declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.  The Plaintiffs seek a declaration that they have no duty to defend or indemnify Genesee County and Cherry under the insurance policies described in this Declaratory Judgment Complaint in regards to the underlying lawsuits filed by Fox in the United States District Court for the Eastern District of Michigan as Case No. 19-cv-11887 ("*Fox* Lawsuit"), and by Puchlak in St. Clair County Circuit Court as Case No. 18-002853-CZ ("*Puchlak* Lawsuit").

## THE PARTIES

2.     Safety Specialty is a Missouri corporation doing business in the State of Michigan as a surplus lines insurance company.

3.     Safety National is a Missouri corporation doing business in the State of Michigan as a surplus lines insurance company.

4.     Genesee County is a county in the State of Michigan.

5.     At the time of the events described in this Complaint, Deborah Cherry was the Treasurer for the Genesee County and a resident of the State of Michigan.

6.     At the time of the events described in this Complaint, Thomas A. Fox was a resident of, and land owner within, Gratiot County, Michigan.  Fox has been added as a party defendant to this action such that he will be bound by the coverage declarations to issue from this Court.

7.     At the time of the events described in this Complaint, Tammy Puchlak, as trustee of the Walter Puchlak Revocable Trust Agreement Dated February 24, 2010, was a resident of, and land owner within, St. Clair County, Michigan. Puchlak has been added as a party defendant to this action such that she will be bound by the coverage declarations to issue from this Court.

## JURISDICTION AND VENUE

8.     This Complaint is brought pursuant to 28 U.S.C. §§2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

9.     An actual justiciable controversy exists between the Plaintiffs, on the one hand, and Genesee County, Cherry, Fox, and Puchlak, on the other hand, within the meaning of 28 U.S.C. §2201 regarding whether the Plaintiffs have duties to defend and indemnify Genesee County, Cherry, Fox and Puchlak under the insurance policies described in this Declaratory Judgment Complaint in regards to the underlying *Fox* and *Puchlak* lawsuits, as more particularly described below.

10.    This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and the suit is between citizens or entities of different states.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), (c) and (d).

## THE *FOX* LAWSUIT

12.     On June 25, 2019, Fox filed a lawsuit against fourteen Michigan counties and their respective county treasurers in the United States District Court for the Eastern District of Michigan as Case No. 19-cv-11887.

13.     On September 4, 2019, Fox filed a First Amended Complaint, which added 13 additional Michigan counties ("Defendant Counties") and their respective treasurers as party defendants, including for the first time Genesee County and its treasurer, Cherry.  A copy of the First Amended *Fox* Complaint is attached hereto as Exhibit "A."

14.     In general terms, Fox has alleged that the Defendant Counties and treasurers have abused the Michigan tax foreclosure process by foreclosing on parcels of land in order to satisfy outstanding unpaid property taxes, selling those properties at prices that are below the properties' respective fair market value, and keeping all of the excess funds/surplus equity for themselves, such that the property owners lose all of the equity that the former landowners had invested in

these properties, minus the amount of their unpaid tax bills and costs associated with the foreclosure sales.

15.     Specifically, Fox has alleged that he was the owner of 109 South Court Avenue in Alma, Michigan and Gratiot County (the "Fox Property").

16.     Fox has also alleged that the Fox Property accrued a tax delinquency of approximately $3,091.23, an amount that included the past due tax owed plus additional compounding interest, fees, penalties, and costs.

17.     Fox has further alleged that, on or about February 21, 2017, Gratiot County's treasurer seized the Fox Property on behalf of Gratiot County.

18.     According to the *Fox* Lawsuit, as of the date the Fox Property was seized, the Fox Property had a State Equalized Value of $25,200, and the State Equalized Value of a seized property is roughly one-half of the property's fair market value.

19.     Fox alleged that the Fox Property was sold on Gratiot County's behalf at a tax auction in which the winning bid was $25,500, such that the difference between what he owed as a tax delinquency and what Gratiot County received from the tax sale was $22,408.77.

20.     Fox alleged that Gratiot County seized $22,408.77 in equity upon the tax sale of the Fox Property, and failed to pay him just compensation for said seized equity; that neither Gratiot County nor its treasurer initiated a condemnation

action to wrest the $22,408.77 in equity from him; and that neither Gratiot County nor its treasurer afforded him any process, plan, or legal mechanism such that he could seek the return of the $22,408.77 in seized equity for the Fox Property.

21.    Fox has alleged that all the Michigan counties named as defendants in the *Fox* Lawsuit and their respective treasurers (collectively, the "*Fox* Defendant Counties") have seized equity from other unnamed delinquent tax payers in the same fashion as Gratiot County and Thomas did with regard to the Fox Property.

22.    Fox also alleged that the *Fox* Defendant Counties made the affirmative, voluntary, and discretionary decision to select and designate their respective treasurers as Foreclosing Governmental Units, which administer the tax delinquency foreclosure and auction process such that the *Fox* Defendant Counties retain the full amount of the tax sale proceeds, even if those proceeds exceed the amount of the tax delinquency of the property's former owner, and never compensate the former owner for their lost equity, nor provide the former owner with a process, plan, or legal mechanism by which the former owner can secure a return of that lost equity.

23.    The *Fox* Lawsuit seeks to certify a class of real property owners in the *Fox* Defendant Counties who, during the relevant statutorily-limited period, had their real property seized and sold by the *Fox* Defendant Counties for various tax

delinquencies, and who were denied compensation for the prices realized in these sales that exceeded the tax debt that each former property owner owed.

24.     In the *Fox* Lawsuit, Fox characterized the taking and forfeiture of the excess equity realized in these tax sales as unconstitutional in regard to both the Michigan and United States Constitutions.

25.     Count I of the *Fox* Lawsuit, subtitled "Taking – Fifth/Fourteenth Amendment Violation, 42 U.S.C. Section 1983 and Section 1988," asserts that the *Fox* Defendant Counties, in their respective tax sales, have taken the equity that they realized over and above the tax delinquency both Fox and the members of the putative class owed; misappropriated this property interest for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution; and deprived Fox and the members of the putative class of their constitutional rights to just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Section 1983 and Section 1988.

26.     Count II of the *Fox* Lawsuit, subtitled "Taking – Fifth/Fourteenth Amendment Violation 'Arising Directly' Under the Fifth Amendment," asserts that the *Fox* Defendant Counties, in their respective tax sales, have taken property interests in the form of unreimbursed equity from Fox and the members of the putative class; appropriated these property interests for public use without payment

of just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution; and refused to provide just compensation for the seizure of equity from Fox and the members of the putative class.

27.     Count III of the *Fox* Lawsuit, subtitled "State Law – Inverse Condemnation," asserts that the *Fox* Defendant Counties, in their respective tax sales, have taken property interests in the form of unreimbursed equity from Fox and the members of the putative class, and have appropriated these property interests for public use without payment of just compensation and without using any direct condemnation processes, such as those outlined by the Uniform Condemnation Procedures Act, MCL 213.51, *et seq*.; and that the *Fox* Defendant Counties' failure to provide Fox and the members of the putative class an opportunity to claim the unreimbursed equity in their respective properties after a tax sale constitutes an "inverse condemnation with damages."

28.     Count IV of the *Fox* Lawsuit, subtitled "State Law – Violation of Michigan Constitution Article X, Section 2," asserts that the *Fox* Defendant Counties, in their respective tax sales, have taken property interests in the form of unreimbursed equity from Fox and the members of the putative class, and have appropriated these property interests for public use without payment of just compensation and without using any direct condemnation processes, such as those outlined by the Uniform Condemnation Procedures Act, MCL 213.51, *et seq*.; and

that the *Fox* Defendant Counties' failure to provide Fox and the members of the putative class an opportunity to claim the unreimbursed equity in their respective properties after a tax sale constitutes an "inverse condemnation with damages."

29.    Count V of the *Fox* Lawsuit, subtitled "Violation of the Eighth Amendment 42 U.S.C. §1983, asserts that it was pled to the extent that the *Fox* Defendant Counties argue that Fox or the members of the putative class "forfeited" or "relinquished" property pursuant to the Michigan General Property Tax Act'; and that the *Fox* Defendant Counties' retention of equity over and above the tax delinquency that both Fox and the members of the putative class owed is "punitive and not remedial."

30.    Count VI of the *Fox* Lawsuit, subtitled "42 U.S.C. §1983 – Violation of Procedural Due Process," asserts that Fox and the putative class members have (or had) a constitutionally protected property interest in the equity of their respective properties; and that the *Fox* Defendant Counties have denied Fox and the putative class members their constitutionally protected property rights by failing to provide a procedure for Fox and the putative class members to secure a refund of any equity that is realized over and above the tax delinquency that both Fox and the members of the putative class owed after their properties are sold at a tax auction, or after the seizure of such property in anticipation of same.

31.     Count VII of the *Fox* Lawsuit, subtitled "42 U.S.C. §1983 – Violation of Substantive Due Process," asserts that the *Fox* Defendant Counties' conduct in regard to the seizure and tax sale of the real property of persons who are delinquent in the payment of their taxes has deprived Fox and the putative class members of their constitutionally protected right to the equity of their seized properties.

32.     Count VIII of the *Fox* Lawsuit, subtitled "Unjust Enrichment," asserts that the *Fox* Defendant Counties have illegally seized equity from Fox and the putative class members.

## THE *PUCHLAK* LAWSUIT

33.     On November 27, 2018, Puchlak, as Trustee of the Walter Puchlak Revocable Trust Agreement Dated February 24, 2010, filed suit against five Michigan counties and their respective county treasurers (including Genesee County and its treasurer, Cherry) in the Circuit Court for the County of St. Clair, Michigan as Case No. 18-002853-CZ ("*Puchlak* Lawsuit").  A copy of the *Puchlak* Class Action Complaint is attached hereto as Exhibit "B."

34.     Puchlak has alleged that the Walter Puchlak Revocable Trust Agreement Dated February 24, 2010, by Puchlak as its trustee, was the owner of 11172 Oatman Road in Brockway, Michigan and St. Clair County (the "Puchlak Property"), and that the Puchlak Property accrued a tax delinquency of approximately $9,600.

35.     Puchlak has also alleged that, on or about August 2, 2016, St. Clair County's treasurer seized the Puchlak Property on behalf of St. Clair County.

36.     According to the *Puchlak* Lawsuit, as of the date the Puchlak Property was seized, the Puchlak Property had a State Equalized Value of $117,500, and the State Equalized Value of a seized property is roughly one-half of the property's fair market value.

37.     Puchlak alleged that the Puchlak Property was sold on St. Clair County's behalf at a tax auction in which the winning bid was the reduced, non-fair market price of $150,000; that the St. Clair County Treasurer kept the $140,400 difference between the tax auction price and the total tax delinquency owed by Puchlak with regard to the Puchlak Property; and neither the treasurer nor St. Clair County provided a refund of the excess or surplus equity realized during the tax sale.

38.     Puchlak seeks to represent a class consisting of all property owners who, within during the relevant statutorily-limited time period, had a property seized by a county treasurer from the counties of Huron, Sanilac, St Clair, Lapeer, and Genesee (the "*Puchlak* Defendant Counties") which was which was sold at tax auction for more than the total tax delinquency and was not refunded the excess equity.

39.     Count I of the *Puchlak* Lawsuit, subtitled "Inverse Condemnation," asserts that the *Puchlak* Defendant Counties have taken federally constitutionally-protected property of Puchlak and the putative class members in the form of equity and/or monies beyond the amount of unpaid taxes and administrative expenses, costs and interest owed, and have appropriated said monies for public use without the payment of just compensation; and that the *Puchlak* Defendant Counties have taken federally constitutionally-protected property of Puchlak and the putative class members in the form of equity and/or monies beyond the amount of unpaid taxes and administrative expenses, costs, and interest owed, and have appropriated said monies for public use without using the mandatory processes outlined under the Uniform Condemnation Procedures Act, MCL 213.51, *et seq.*

40.     Count II of the *Puchlak* Lawsuit, subtitled "Excessive Fine – Eighth Amendment Violation – 42 U.S.C. §1983," asserts that the *Puchlak* Defendant Counties' imposition and retention of excessive fines in the form of the forfeiture of the equity interests that Puchlak and the putative class members had in their respective properties violates the rights that Puchlak and the putative class members are afforded under the Eighth Amendment to the United States Constitution.

41.     Count III of the *Puchlak* Lawsuit, subtitled "Excessive Fine – Const. 1963, Art. 1, §16," asserts that the forfeiture of equity beyond the already imposed

monetary punishments of the Michigan General Property Tax Act is a fine subject to the limitation of Article 1, Section 16 of the Michigan Constitution.

## THE INSURANCE POLICIES

### The Safety Specialty Public Officials and Employment Practices Liability Policy

42.     Safety Specialty issued its claims made and reported Public Officials and Employment Practices Liability ("PO&EPL") Policy No. POC4056122 to Genesee County for the policy period of December 15, 2018 to December 15, 2019.  A copy of this policy is attached hereto as Exhibit "C."

43.     Safety Specialty's PO&EPL Policy has Limits of Liability of $2 million Each Wrongful Act and $2 million in the Policy Aggregate, which are subject to a Self-Insured Retention of $350,000 Each Wrongful Act including Claims Expenses.

44.     Safety Specialty's PO&EPL Policy, provides, in relevant part, as follows:

**PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES
LIABILITY COVERAGE FORM**

**CLAIMS MADE AND REPORTED**

**\* \* \***

**NOTICE:  THIS  POLICY  IS  A  CLAIMS-MADE  POLICY
WHICH  PROVIDES  LIABILITY  COVERAGE  ONLY  IF  A
CLAIM  IS  MADE  AND  REPORTED  DURING  THE  POLICY
PERIOD  OR  ANY  APPLICABLE  EXTENDED  REPORTING**

PERIOD. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine the **Insured's** rights and duties, and what is and is not covered.

Titles are used within this policy for convenience only and shall not control or affect the meaning or construction of any provision of this policy.

Other words and phrases that appear in bold have special meaning. Refer to **SECTION VII - DEFINITIONS.**

In consideration of the payment of the premium, in reliance upon the statements in the written application for insurance and subject to all of the terms of this policy, the **Company** and the **Insured** agree as follows:

## SECTION I – COVERAGES

1.     **Insuring Agreement**

The **Company** will pay on behalf of the **Insured** those **Damages** resulting from a **Wrongful Act** to which this insurance applies. The **Claim** must be first made during the **Policy Period** and reported to the **Company** in compliance with **SECTION IV - GENERAL CONDITIONS**, Item 7. or any applicable reporting period under **SECTION V - EXTENDED REPORTING PERIOD.**

The **Wrongful Act** must take place in the **Policy Territory** and must occur:

A.     During the **Policy Period**; or

B.     Subsequent to the Retroactive Date, if any, stated in the Declarations of this policy, but only if:

(1)     The **Insured** did not give notice relating to the **Wrongful Act** under any other policy of insurance; and

**(2)** Before the effective date of this policy, no **Insured** knew or had a basis to believe that the circumstances of such **Wrongful Act** might reasonably be expected to result in or give rise to a **Claim** …

**2.** **Defense, Self-Insured Retention, and Supplementary Payments**

**A.** This policy is subject to a Self-Insured Retention applicable to each **Wrongful Act** which must be paid by the first **Named Insured**. The Self-Insured Retention includes the payment of **Claims Expenses** and/or **Damages** within the limit shown in the Declarations as the Self-Insured Retention.

**B.** Once the Self-Insured Retention has been paid and subject to the terms of this policy, the **Company** shall have the rights and duty to defend the **Insured(s)** against a **Claim** covered by this policy, except where otherwise excluded. The **Company** shall have no obligation to defend any **Claim** that is not covered by this policy and no obligation to defend after the applicable Limit of Liability has been exhausted.

**C.** Before the Self-Insured Retention is exhausted, the first **Named Insured** has the right to appoint defense counsel, subject to the **Company's** written consent and approval, to defend a **Claim** against the **Insured(s)**. The **Company**, at its sole discretion, may withdraw approval of counsel and require the first **Named Insured** to appoint a different defense counsel subject to the **Company's** written consent and approval …

## SECTION II - WHO IS AN INSURED

**1.** Each of the following is an **Insured:**

**A.** The **Named Insured** as shown in the Declarations …

\* \* \*

**D.** The Named Insured's elected or appointed officials but only for **Wrongful Acts** while acting within the course and scope of their duties for the **Named Insured**; and

E.  Boards, commissions, or other governmental units, and authorized members and officials thereof, created by, operated by and under the **Named Insured** within an apportionment of the total operating budget stated in the application for this insurance, but only for **Wrongful Acts** while acting within the course and scope of their duties for the **Named Insured** …

\* \* \*

## SECTION IV – GENERAL CONDITIONS

**1.   Action Against the Company**

No action shall lie against the **Company** unless, as a condition precedent thereto, all of the terms of this policy shall have been fully complied with, nor until the amount of an **Insured's** obligation to pay shall have been finally determined either by a final judgment against the Insured or by written agreement of the first **Named Insured**, the claimant and the **Company** …

\* \* \*

## SECTION VI - EXCLUSIONS

This policy does not apply to, and the **Company** has no obligation to defend any **Claim** …

**7.**   Arising out of:

\* \* \*

B.  Violation of public occupancy or violation of property rights: …

\* \* \*

**9.**   Arising out of:

\* \* \*

B.  Tax collection, or the improper administration of taxes or loss that reflects any tax obligation.

\* \* \*

12.     Arising out of eminent domain, condemnation, inverse condemnation, temporary or permanent taking, adverse possession, or dedication by adverse use; …

\* \* \*

15.     Arising out of fraud, dishonesty, intentional acts or omissions, or criminal acts or omissions committed by or at the direction of the **Insured**, or the willful violation of any federal, state or local statute, ordinance, rule, or regulation committed by or with the knowledge or consent of the **Insured**.  However, if a **Claim** made against the **Insured** also seeks compensatory **Damages**, the **Company** will afford a defense to such action subject to the Self-Insured Retention and defense provisions of this policy, until such time as a finding or judgment is entered that such conduct or violations occurred.  The **Company** shall have no obligation to pay any monetary awards, amounts, fees, costs or expenses in connection with such a finding or judgment.

\* \* \*

21.     Seeking relief or redress in any form other than compensatory **Damages**. However, if a **Claim** against the **Insured** also seeks compensatory **Damages**, the **Company** will afford a defense to such action subject to the Self-Insured Retention and defense provisions of this policy, but the **Company** shall not have any obligation to pay any fees, costs or expenses incurred as a result of any order, award or judgment in any form other than for compensatory **Damages**, including but not limited to orders, awards or judgments for injunctive or declaratory relief.

\* \* \*

23.     Arising out of a **Claim**, proceeding or other circumstance for which the **Named Insured** gave notice under any policy of insurance in effect prior to the inception date of this policy, including any prior policy issued by the **Company** or any other insurer.

\* \* \*

25.     Seeking fines or punitive, exemplary, treble or multiplied damages or other awards that are uninsurable under the law or

public policy.  However, if a **Claim** made against the **Insured** also seeks compensatory **Damages**, the **Company** will afford a defense to such action pursuant to the Self-Insured Retention and defense provisions of this policy, but the **Company** shall not have any obligation to pay for fines or punitive, exemplary, treble or multiplied damages awards or any costs or interest associated therewith.

\* \* \*

27.   Arising out of self-dealing or gaining of any profit, remuneration or advantage to which an **Insured** is or was not legally entitled.

\* \* \*

## SECTION VII - DEFINITIONS

Whenever used in this policy, the following words have these meanings …

3.   **Claim** means any of the following received by an **Insured** and alleging a **Wrongful Act** during the **Policy Period** or subsequent to the Retroactive Date, if applicable:

    A.   A written demand for **Damages** or a notice advising an **Insured** of an intent to sue for **Damages** or a right to sue for **Damages;**

    B.   Notice of an arbitration or alternative dispute proceeding seeking **Damages** to which the **Insured** must submit or does submit with the **Company's** consent; or

    C.   A civil proceeding alleging **Damages** commenced by the service of a summons, complaint or similar pleading

4.   **Claims Expenses** means reasonable and necessary fees, costs and expenses charged by an attorney designated by the **Company**, or designated by the Insured with prior written consent of the **Company**, in the investigation and defense of any **Claim** against the **Insured**, and all other fees, costs, and expenses resulting from the investigation, adjustment and defense of a **Claim.  Claims Expenses** shall not include wages or salaries of employees of the **Company** or the **Insured.**

5.      The **Company** means the insurer stated in the Declarations of this policy.

6.      **Damages** means compensatory damages which the **Insured** is legally obligated to pay as a result of a judgment or settlement for a **Wrongful Act** covered by this policy …

\* \* \*

9.      **Insured** means a person(s) or organization(s) identified in **SECTION II - WHO IS AN INSURED** …

\* \* \*

11.     **Named Insured** means the entity named in the Declarations.

12.     **Policy Period** means the period of time from the inception date of policy stated in the Declarations to the expiration date of this policy stated in the Declarations or to any earlier cancellation date of this policy …

\* \* \*

16.     **Wrongful Act** means any of the following committed by an **Insured** in the performance of the **Insured's** official duties for or on behalf of the **Named Insured:**

A.      Any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty; or

B.      Any **Wrongful Employment Practice.**

**Wrongful Act** includes a series of connected or interrelated acts, errors, omissions, misstatements, misleading statements, neglect, breaches of duty, or **Wrongful Employment Practices** committed by one or more **Insureds** in performance of the **Insured's** official duties, all of which shall be considered one **Wrongful Act.**

17.     **Wrongful Employment Practice** means any of the following acts or practices:

A.      Discrimination in hiring, promotion, advancement, opportunity, demotion, discipline or pay (including discrimination based on age, gender, race, color, national

origin, religion, sexual orientation or preference, pregnancy or disability);

**B.**    Harassment, coercion or creation of an intimidating, hostile or offensive work environment;

**C.**    Wrongful demotion, discipline, dismissal, reassignment, discharge or termination (whether actual or constructive);

**D.**    Wrongful failure to employ;

**E.**    Employment-related libel, slander, defamation, humiliation or invasion of privacy;

**F.**    Failure to provide or enforce adequate or consistent policies or procedures relating to employment practices;

**G.**    Employment-related violation of an individual's civil rights;

**H.**    Employment-related negligent infliction of emotional distress; and

**I.**    Retaliatory treatment due to the actual or attempted exercise of an **Employee's** rights under the law or an **Employee's** disclosure or threatened disclosure of activities by the **Insured** that may violate law or the **Employee's** cooperation in any investigation or proceeding into whether the **Insured's** activities may violate law.

* * *

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SELF-INSURED RETENTION ENDORSEMENT**

This endorsement modifies insurance provided under the following Coverage Forms:

**LAW ENFORCEMENT LIABILITY**
**PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY EDUCATORS LEGAL LIABILITY AND EMPLOYMENT PRACTICES LIABILITY**

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

**SCHEDULE**

| | |
|---|---|
| Self-Insured Retention | $350,000     Per Wrongful Act |

This policy is subject to a Self-Insured Retention in the Per **Wrongful Act** amount set forth in the Schedule above. The **Wrongful Act** Self-Insured Retention may be met by the payment of **Claims Expenses, Damages** or a combination of both. The provisions of the policy apply unless modified by this endorsement. In the event of a conflict between or among the provisions set forth in this endorsement and the policy, the terms of this endorsement shall control. The provisions of this endorsement are conditions precedent that must be complied with in order for the policy's coverage to apply …

1.      SELF-INSURED RETENTION

The **Company's** obligation to pay **Claims Expenses** and **Damages** on behalf of the **Insured** applies only to amounts in excess of the applicable Self-Insured Retention shown in the above Schedule.

The Self-Insured Retention is primary and underlying to the insurance provided by the policy and can only be satisfied when the full amount of the retention is paid by the first **Named Insured**. After the first **Named Insured** has paid the amount of the applicable Self-Insured Retention, the **Company** will pay on the **Insured's** behalf, or reimburse the **Insured** for paying **Claims Expenses** or **Damages** in excess of the applicable Self-Insured Retention. The Company's payment of **Damages** shall be subject to the Limits of Liability shown in the Declarations for the policy …

2.      SELF-INSURED RETENTION PER WRONGFUL ACT

If a Per **Wrongful Act** Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to the **Company's** liability under the policy that the first **Named Insured** make actual payment of all **Claim Expenses** and

21

**Damages** until the first **Named Insured** has paid the amount equal to the applicable Per **Wrongful Act** amount …

3.   LIMITS OF LIABILITY

The **Wrongful Act** Limit of Liability on the policy is excess over the **Wrongful Act** Self-Insured Retention …

\* \* \*

10.   DEFENSE & SETTLEMENT

\* \* \*

C.   The **Company**, at its sole discretion, has the right but not the duty to associate itself in the defense of any **Claim** or **Suit** …

**The Safety National Commercial General Liability Policy**

45.   Safety National issued its Commercial General Liability ("CGL") Policy No. GLA4052188 to Genesee County for the period from December 15, 2016 to December 15, 2017, and the policy was renewed for the 2017-2018 and 2018-2019 policy years.  A copy of this policy is attached hereto as Exhibit "D."

46.   Safety National's CGL Policy has liability limits of $2 million Each Occurrence (combined "bodily injury" & "property damage"); $2 million Personal & Advertising Injury limit; and $4 million in the General Aggregate, subject to a self-insured retention ("SIR") of $350,000 Per "Occurrence," which applies to both indemnity and "defense costs"

47.   Safety National's CGL Policy contains a Governmental Subdivisions Endorsement, which amends Section II – Who Is An Insured to include "any

elective or appointed officer or member of any board or commission or agency of yours while acting within the scope of their duties as such."

48.     Safety National's CGL Policy, provides, in relevant part, as follows:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who is An Insured.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section **V** - Definitions.

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply …

    **b.**     This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no insured listed in Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur….

**2.    Exclusions**

This insurance does not apply to:

**a.    Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.   This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property …

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply …

**b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2.    Exclusions**

This insurance does not apply to:

      **a.**      **Knowing Violation Of Rights Of Another**

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury" …

## SECTION II – WHO IS AN INSURED

**1.**      If you are designated in the Declarations as …

* * *

      **d.**      An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insured, but only with respect to their duties as your officers or directors. Your stockholders are also insured, but only with respect to their liability as stockholders …

* * *

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

* * *

**3.**      **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

* * *

      **b.**      To sue us on this Coverage Part unless all of its terms have been fully complied with …

## SECTION V – DEFINITIONS

* * *

**3.**      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time …

* * *

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** **"**Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document …

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement" …

\* \* \*

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all

27

resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment …

* * *

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SELF-INSURED RETENTION ENDORSEMENT**

This endorsement modifies insurance provided under the following Coverage Forms:

**COMMERCIAL   GENERAL   LIABILITY   COVERAGE FORM …**

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

**SCHEDULE**

| Self-Insured Retention | $350,000     Per "Occurrence" |
|---|---|

**CHANGE**

I.     The coverage sections of the policy pertaining to **BODILY INJURY AND PROPERTY DAMAGE LIABILITY, PERSONAL AND ADVERTISING INJURY LIABILITY,**

**MEDICAL PAYMENTS, LIQUOR LIABILITY** and **SUPPLEMENTARY PAYMENTS** are modified to provide the additional provisions noted below.

## A. SELF-INSURED RETENTION

Our obligation to pay damages, medical expenses and "defense costs" to, or on behalf of, the "insured" applies only to that portion of the "Ultimate Net Loss" in excess of the applicable Self-Insured Retention shown in the above Schedule, subject to any below described Aggregate Self-Insured Retention Amount.

After you have paid the amount of the applicable Self-Insured Retention, we will pay on your behalf, or reimburse you for paying such damages, medical expenses or "defense costs" in excess of the applicable Self-Insured Retention. Our payment of damages and medical expenses shall be subject to the Limits of Insurance shown in the Declarations for the Coverage Form. The amount that would otherwise be payable by us as damages, medical expenses or "defense costs" under the above described LIABILITY COVERAGES, will be reduced by the amount of the Self-Insured Retention.

1. **SELF-INSURED RETENTION PER OCCURRENCE**

    If a Per Occurrence Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each "occurrence" or offense until you have paid the Self-Insured Retention amount and "defense costs" equal to the applicable Per Occurrence amount shown in the Schedule….

B. **LIMITS OF INSURANCE**

The applicable LIMIT OF INSURANCE provisions apply with the following change:

The Limit of Insurance applies over the Self-Insured Retention shown in the Schedule …

D. **DEFENSE & SETTLEMENT** shall be added as follows;

1.      You may not settle any claim or "suit" that exceeds the applicable Self-Insured Retention amount without our written permission to do so.  If you fail to obtain our written permission, we shall have no obligation to provide coverage for that claim or "suit" under this policy.

2.      We have the right but not the duty to associate ourselves in or assume control of the defense of any claim or "suit" which in our sole judgment is likely to exceed the Self-Insured Retention …

## III.   ADDITIONAL DEFINITIONS

The following are added to the DEFINITIONS Section of each of the above-listed Coverage Forms:

"Defense Costs" means, with respect to each "occurrence", offense or claim:

Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process . . .and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or   defense of a claim or loss under the policy.

"Ultimate Net Loss" means, with respect to each "occurrence" or offense, the total of:

1.      All sums that the "insured" is legally liable to pay as damages, because of liability to which this insurance applies, determined either through final adjudication or through compromise settlement with our consent, after making proper deductions for all recoveries; and

2.      All sums that are covered as damages, medical expenses or "defense costs" under the Coverage Form.

* * *

<u>COUNT I – DECLARATORY JUDGMENT RE: SAFETY SPECIALTY'S
PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY
POLICY
WITH REGARD TO THE *FOX* LAWSUIT</u>

49.     Plaintiffs reallege the allegations in Paragraphs 1 through 48 as if they were set forth fully herein.

50.     Defendants are not entitled to insurance coverage under the Safety Specialty PO&EPL Policy for the *Fox* Lawsuit because the *Fox* Lawsuit does not allege a "wrongful act" as that term is defined by the Safety Specialty PO&EPL Policy.

51.     Alternatively, Defendants are not entitled to insurance coverage under the Safety Specialty PO&EPL Policy because the *Fox* Lawsuit does not allege "damages" as that term is defined by the Safety Specialty PO&EPL Policy.

52.     Alternatively, Defendants are not entitled to insurance coverage under the Safety Specialty PO&EPL Policy for the *Fox* Lawsuit to the extent that any insured under the terms of the Policy gave notice under any insurance policy other than Safety Specialty's PO&EPL Policy in regard to the "wrongful acts" alleged to be at issue in the *Fox* Lawsuit.

53.     Alternatively, Defendants are not entitled to insurance coverage under the Safety Specialty PO&EPL Policy for the *Fox* Lawsuit to the extent that any "insured" knew or had a basis to believe, prior to the December 15, 2018 policy inception date of the Policy, that circumstances alleged in the *Fox* Lawsuit might

reasonably be expected to result in or give rise to a "claim" as that term is defined by Safety Specialty's PO&EPL Policy.

54.     Alternatively, the Violation of Public Occupancy or Property Rights Exclusion (Exclusion No. 7(B)) to the Safety Specialty PO&EPL Policy bars coverage for the *Fox* Lawsuit.

55.     Alternatively, the Tax Collection Exclusion (Exclusion No. 9(B)) to the Safety Specialty PO&EPL Policy bars coverage for the *Fox* Lawsuit.

56.     Alternatively, the Inverse Condemnation and/or Temporary or Permanent Taking Exclusion (Exclusion No. 12) to the Safety Specialty PO&EPL Policy bars coverage for the *Fox* Lawsuit.

57.     Alternatively, Exclusion No. 15 to the Safety Specialty PO&EPL Policy bars coverage for the *Fox* Lawsuit to the extent the *Fox* Lawsuit alleges a claim arising out of fraud, dishonesty, intentional acts or omissions, or criminal acts or omissions committed by or at the direction of the Insured.

58.     Alternatively, Exclusion No. 15 to the Safety Specialty PO&EPL Policy bars coverage for the *Fox* Lawsuit to the extent the *Fox* Lawsuit alleges a claim arising out of the willful violation of any federal, state or local statute, ordinance, rule, or regulation committed by or with the knowledge or consent of the Insured.

59.     Alternatively, Exclusion No. 21 to the Safety Specialty PO&EPL Policy bars coverage for the *Fox* Lawsuit to the extent the *Fox* Lawsuit seeks relief or redress in any form other than compensatory damages.

60.     Alternatively, Exclusion No. 23 to the Safety Specialty PO&EPL Policy bars coverage to the extent that any insured under said Policy gave notice of a "claim," proceeding or other circumstance involving the matters alleged in the *Fox* Lawsuit under any other policy of insurance in effect prior to the December 15, 2018 inception date of the Safety Specialty PO&EPL policy.

61.     Alternatively, Exclusion No. 26 to the Safety Specialty PO&EPL Policy bars coverage to the extent that the *Fox* Lawsuit seeks fines, punitive damages, or "other types of awards that are uninsurable under the law or public policy."

62.     Alternatively, the Self-Dealing Exclusion (Exclusion No. 27) to the Safety Specialty PO&EPL Policy bars coverage for the *Fox* Lawsuit.

63.     Alternatively, Defendants are not entitled to insurance coverage under the Safety Specialty PO&EPL Policy for the *Fox* Lawsuit to the extent it has been alleged in the *Fox* Lawsuit that Cherry committed a "wrongful act" while acting outside the course and scope of her official duties as Treasurer for Genesee County.

WHEREFORE, the Plaintiffs, SAFETY SPECIALTY INSURANCE COMPANY and SAFETY NATIONAL CASUALTY COMPANY respectfully requests that this Court find and declare as follows:

(A)     Plaintiff, SAFETY SPECIALTY INSURANCE COMPANY, does not owe Defendants, COUNTY OF GENESEE by its BOARD OF COMMISSIONERS, and DEBORAH CHERRY, insurance coverage (defense or indemnity) under SAFETY SPECIALTY's Public Officials and Employment Practices Liability Policy No. POC4056122 as issued to the COUNTY OF GENESEE by its BOARD OF COMMISSIONERS in regard to the *Fox* Lawsuit; and

(B)     Plaintiff, SAFETY SPECIALTY INSURANCE COMPANY, is entitled to such additional relief as this Court deems just and equitable.

## COUNT II – DECLARATORY JUDGMENT RE: SAFETY SPECIALTY'S PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY POLICY WITH REGARD TO THE *PUCHLAK* SUIT

64.     Plaintiffs reallege the allegations in Paragraphs 1 through 63 as if they were set forth fully herein.

65.     Defendants are not entitled to insurance coverage under the Safety Specialty PO&EPL Policy because the *Puchlak* Lawsuit does not allege a "wrongful act" as that term is defined by the Safety Specialty PO&EPL Policy.

66.     Alternatively, Defendants are not entitled to insurance coverage under the Safety Specialty PO&EPL Policy because the *Puchlak* Lawsuit does not allege "damages" as that term is defined by the Safety Specialty PO&EPL Policy.

67.    Alternatively, Defendants are not entitled to insurance coverage under the Safety Specialty PO&EPL Policy for the *Puchlak* Lawsuit to the extent that any insured under the terms of the Policy gave notice under any insurance policy other than Safety Specialty's PO&EPL Policy in regard to the "wrongful acts" alleged to be at issue in the *Puchlak* Lawsuit.

68.    Alternatively, Defendants are not entitled to insurance coverage under the Safety Specialty PO&EPL Policy for the *Puchlak* Lawsuit to the extent that any "insured" knew or had a basis to believe, prior to the December 15, 2018 policy inception date of the Policy, that circumstances alleged in the *Puchlak* Lawsuit might reasonably be expected to result in or give rise to a "claim" as that term is defined by Safety Specialty's PO&EPL Policy.

69.    Alternatively, the Violation of Public Occupancy or Property Rights Exclusion (Exclusion No. 7(B)) to the Safety Specialty PO&EPL Policy bars coverage for the *Puchlak* Lawsuit.

70.    Alternatively, the Tax Collection Exclusion (Exclusion No. 9(B)) to the Safety Specialty PO&EPL Policy bars coverage for the *Puchlak* Lawsuit.

71.    Alternatively, the Inverse Condemnation and/or Temporary or Permanent Taking Exclusion (Exclusion No. 12) to the Safety Specialty PO&EPL Policy bars coverage for the *Puchlak* Lawsuit.

72.     Alternatively, Exclusion No. 15 to the Safety Specialty PO&EPL Policy bars coverage for the *Puchlak* Lawsuit to the extent the *Puchlak* Lawsuit alleges a claim arising out of fraud, dishonesty, intentional acts or omissions, or criminal acts or omissions committed by or at the direction of the Insured.

73.     Alternatively, Exclusion No. 15 to the Safety Specialty PO&EPL Policy bars coverage for the *Puchlak* Lawsuit to the extent the *Puchlak* Lawsuit alleges a claim arising out of the willful violation of any federal, state or local statute, ordinance, rule, or regulation committed by or with the knowledge or consent of the Insured.

74.     Alternatively, Exclusion No. 21 to the Safety Specialty PO&EPL Policy bars coverage for the *Fox* Lawsuit to the extent the *Puchlak* Lawsuit seeks relief or redress in any form other than compensatory damages.

75.     Alternatively, Exclusion No. 23 to the Safety Specialty PO&EPL Policy bars coverage to the extent that any insured under said Policy gave notice of a "claim," proceeding or other circumstance involving the matters alleged in the *Puchlak* Lawsuit under any other policy of insurance in effect prior to the December 15, 2018 inception date of the Safety Specialty PO&EPL policy.

76.     Alternatively, Exclusion No. 26 to the Safety Specialty PO&EPL Policy bars coverage to the extent that the *Puchlak* Lawsuit seeks fines, punitive

damages, or "other types of awards that are uninsurable under the law or public policy."

77.    Alternatively, the Self-Dealing Exclusion (Exclusion No. 27) to the Safety Specialty PO&EPL Policy bars coverage for the *Puchlak* Lawsuit.

78.    Alternatively, Defendants are not entitled to insurance coverage under the Safety Specialty PO&EPL Policy for the *Puchlak* Lawsuit to the extent it has been alleged in the *Puchlak* Lawsuit that Cherry committed a "wrongful act" while acting outside the course and scope of her official duties as Treasurer for Genesee County.

WHEREFORE, the Plaintiffs, SAFETY SPECIALTY INSURANCE COMPANY and SAFETY NATIONAL CASUALTY COMPANY respectfully requests that this Court find and declare as follows:

(A)    Plaintiff, SAFETY SPECIALTY INSURANCE COMPANY, does not owe Defendants, COUNTY OF GENESEE by its BOARD OF COMMISSIONERS, DEBORAH CHERRY, insurance coverage (defense or indemnity) under SAFETY SPECIALTY's Public Officials and Employment Practices Liability Policy No. POC4056122 as issued to the COUNTY OF GENESEE by its BOARD OF COMMISSIONERS in regard to the *Puchlak* Lawsuit; and

(B)    Plaintiff, SAFETY SPECIALTY INSURANCE COMPANY, is entitled to such additional relief as this Court deems just and equitable.

**COUNT III – DECLARATORY JUDGMENT RE: SAFETY NATIONAL'S COMMERCIAL GENERAL LIABILITY POLICY WITH REGARD TO THE *FOX* LAWSUIT**

79.     Plaintiffs reallege the allegations in Paragraphs 1 through 78 as if they were set forth fully herein.

80.     Defendants are not entitled to insurance coverage under Coverage Part A – Bodily Injury and Property Damage Liability of the Safety National CGL Policy because the *Fox* Lawsuit fails to allege that either the County of Genesee by its Board of Commissioners or Cherry, in her individual or official capacity, has become legally obligated to pay damages because of "bodily injury" or "property damage" to which the Safety National CGL Policy applies, caused by an "occurrence" during the policy period, as those terms are defined by the Safety National CGL Policy.

81.     Alternatively, the Expected or Intended Exclusion (Exclusion 2(a)) to Coverage Part A of the Safety National CGL Policy bars coverage for the *Fox* Lawsuit.

82.     Alternatively, Defendants are not entitled to insurance coverage under Coverage Part B – Personal and Advertising Injury Liability of the Safety National CGL Policy because the *Fox* Lawsuit fails to allege that either the County of Genesee by its Board of Commissioners or Cherry, in her individual or official capacity, has become legally obligated to pay damages because of "personal and advertising injury" caused by an offense arising out of the Defendants' business

that was committed in the "coverage territory" during the policy period, as those terms are defined by the Safety National CGL Policy.

83.    Alternatively, the Knowing Violation of Rights of Another Exclusion (Exclusion 2(a)) to Coverage Part B of the Safety National GCL Policy bars coverage for the *Fox* Lawsuit.

WHEREFORE, the Plaintiffs, SAFETY SPECIALTY INSURANCE COMPANY and SAFETY NATIONAL CASUALTY COMPANY respectfully requests that this Court find and declare as follows:

(A)    Plaintiff, SAFETY NATIONAL CASUALTY COMPANY, does not owe Defendants, COUNTY OF GENESEE by its BOARD OF COMMISSIONERS, DEBORAH CHERRY, insurance coverage (defense or indemnity) under SAFETY NATIONAL's Commercial General Liability Policy No. GLA4052188 as issued to the COUNTY OF GENESEE by its BOARD OF COMMISSIONERS in regard to the *Fox* Lawsuit; and

(B)    Plaintiff, SAFETY NATIONAL CASUALTY COMPANY, is entitled to such additional relief as this Court deems just and equitable.

## COUNT IV – DECLARATORY JUDGMENT RE: SAFETY NATIONAL'S COMMERCIAL GENERAL LIABILITY POLICY WITH REGARD TO THE *PUCHLAK* LAWSUIT

84.    Plaintiffs reallege the allegations in Paragraphs 1 through 83 as if they were set forth fully herein.

85.    Defendants Are not entitled to insurance coverage under Coverage Part A – Bodily Injury and Property Damage Liability of the Safety National CGL Policy because the *Puchlak* Lawsuit fails to allege that either the County of

Genesee by its Board of Commissioners or Cherry, in her individual or official capacity, has become legally obligated to pay damages because of "bodily injury" or "property damage" to which the Safety National CGL Policy applies, caused by an "occurrence" during the policy period, as those terms are defined by the Safety National CGL Policy.

86.    Alternatively, the Expected or Intended Exclusion (Exclusion 2(a)) to Coverage Part A of the Safety National CGL Policy bars coverage for the *Puchlak* Lawsuit.

87.    Alternatively, Defendants are not entitled to insurance coverage under Coverage Part B – Personal and Advertising Injury Liability of the Safety National CGL Policy because the *Puchlak* Lawsuit fails to allege that either the County of Genesee by its Board of Commissioners or Cherry, in her individual or official capacity, has become legally obligated to pay damages because of "personal and advertising injury" caused by an offense arising out of the Defendants' business that was committed in the "coverage territory" during the policy period, as those terms are defined by the Safety National CGL Policy.

88.    Alternatively, the Knowing Violation of Rights of Another Exclusion (Exclusion 2(a)) to Coverage Part B of the Safety National GCL Policy bars coverage for the *Puchlak* Lawsuit.

WHEREFORE, the Plaintiffs, SAFETY SPECIALTY INSURANCE COMPANY and SAFETY NATIONAL CASUALTY COMPANY respectfully requests that this Court find and declare as follows:

(A)     Plaintiff, SAFETY NATIONAL CASUALTY COMPANY, does not owe Defendants, COUNTY OF GENESEE by its BOARD OF COMMISSIONERS, DEBORAH CHERRY, insurance coverage (defense or indemnity) under SAFETY NATIONAL's Commercial General Liability Policy No. GLA4052188 as issued to the COUNTY OF GENESEE by its BOARD OF COMMISSIONERS in regard to the *Puchlak* Lawsuit; and

(B)     Plaintiff, SAFETY NATIONAL CASUALTY COMPANY, is entitled to such additional relief as this Court deems just and equitable.

Respectfully submitted,

By:  */s/ Adam P. Sadowski*
Adam P. Sadowski (P73864)
Gallagher Sharp LLP
244 West Fort Street, Suite 660
Detroit, MI 48226
(313) 424-4648
asadowski@gallaghersharp.com

Richard C. Rezie (Ohio Bar No.0071321)
Gallagher Sharp LLP
1215 Superior Avenue, 7th Floor
Cleveland, OH 44114
(216) 522-1097
rrezie@gallaghersharp.com

John D. Hackett *(admission pending)*
Cassiday Schade LLP
222 W. Adams Street
Suite 2900
Chicago, IL 60606
(312) 641-3100
jhackett@cassiday.com

Christopher C. Cassidy *(admission pending)*
Cassiday Schade LLP
222 W. Adams Street
Suite 2900
Chicago, IL 60606
(312) 641-3100
ccassidy@cassiday.com

*Attorneys for Plaintiffs*