# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  November 21, 2022

Mr. Markus Edgars Apelis
Mr. Richard C.O. Rezie
Gallagher Sharp
1215 Superior Avenue
Seventh Floor
Cleveland, OH 44114

Mr. Philip Lee Ellison
Outside Legal Counsel
P.O. Box 107
Hemlock, MI 48626

Mr. Jeffrey Charles Gerish
Plunkett Cooney
38505 Woodward Avenue
Suite 100
Bloomfield Hills, MI 48304

Mr. John David Hackett
Mr. Adam H. McCabe
Cassiday Schade
222 W. Adams Street
Suite 2900
Chicago, IL 60606

Mr. Adam P. Sadowski
Office of the Attorney General of Michigan
P.O. Box 30217
Lansing, MI 48909

Re:  Case Nos. 22-11891196, *Safety National Casualty Co, et al v. Genesee Cnty. Bd of Comm'rs et al*
Originating Case No. : 1:20-cv-13290

Dear Counsel,

The court today announced its decision in the above-styled cases.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0250p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

─────────────────

SAFETY SPECIALTY INSURANCE COMPANY; SAFETY
NATIONAL CASUALTY COMPANY,

          *Plaintiffs-Appellees* (22-1189),

          *Plaintiffs-Appellants* (22-1196),

    *v.*

GENESEE COUNTY BOARD OF COMMISSIONERS;
DEBORAH CHERRY,

          *Defendants-Appellants* (22-1189),


THOMAS A. FOX; TAMMY PUCHLAK, as Trustee of the
Walter Puchlak Revocable Trust Agreement dated
February 24, 2010,

          *Defendants-Appellees* (22-1196).

> Nos. 22-1189/1196

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:20-cv-13290—Thomas L. Ludington, District Judge.

Argued: October 19, 2022

Decided and Filed: November 21, 2022

Before: SUTTON, Chief Judge; BOGGS and KETHLEDGE, Circuit Judges.

─────────────────

### COUNSEL

**ARGUED:** Jeffrey C. Gerish, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Genesee County and Deborah Cherry. John D. Hackett, CASSIDAY SCHADE, LLP, Chicago, Illinois, for Safety Specialty Insurance Company and Safety National Casualty Company. Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Thomas Fox and Tammy Puchlack. **ON BRIEF:** Jeffrey C. Gerish, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Genesee County and Deborah Cherry. John D. Hackett, Adam H. McCabe, CASSIDAY SCHADE, LLP, Chicago, Illinois, Richard C.O. Rezie, GALLAGHER SHARP LLP, Cleveland, Ohio, for Safety Specialty Insurance Company and Safety National Casualty Company. Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Thomas Fox and Tammy Puchlack.

-------------------

## OPINION

-------------------

BOGGS, Circuit Judge.  This insurance-coverage dispute springs from two class-action lawsuits against several Michigan counties that retained surplus proceeds from the tax-foreclosure sales of private property.  Genesee County was named as a defendant in the lawsuits and claimed coverage under two liability-insurance policies.  The County's insurers, Safety National Casualty Company and Safety Specialty Insurance Company (together, "Safety"), denied the claim and filed this declaratory-judgment action in federal court against both the County and the underlying class representatives.  The district court agreed with Safety that it has no duty to defend or indemnify the County from the lawsuits, but dismissed Safety's case against the class representatives for lack of federal jurisdiction.  We affirm.

## I. BACKGROUND

### A.  The *Fox* and *Puchlak* Lawsuits

In November 2018, Tammy Puchlak filed a class-action complaint in Michigan state court against five Michigan counties and their treasurers, including Genesee County and Deborah Cherry.  She alleges that St. Clair County seized trust property to satisfy a $9,600 property-tax delinquency, sold the property at auction for $150,000—far below its fair-market value—and then kept the $140,400 difference.  Seeking to represent a class of property owners who had their property seized and sold without receiving the surplus proceeds, Puchlak asserts that these counties committed takings without just compensation or imposed excessive fines in violation of the Michigan and federal constitutions.

In June 2019, Thomas A. Fox filed a class-action complaint in federal district court against fourteen Michigan counties and their treasurers.  He later amended his complaint to add thirteen more counties and their treasurers, including Genesee County and Deborah Cherry.  Fox claims that Gratiot County seized his property to satisfy a property-tax delinquency of $3,091.23, sold the property at auction for $25,500.00, then kept the $22,408.77 difference between what

Fox owed and what Gratiot County received.  Like Puchlak, Fox asserts that the counties named in his lawsuit committed takings without just compensation and imposed excessive fines; he also alleges unjust enrichment and violations of substantive and procedural due process.  In October 2020, the district court certified Fox's class.  *Fox v. County of Saginaw*, 2020 WL 6118487, at *11 (E.D. Mich. 2020).

## B.  The Insurance Policies

In 2018, Safety issued a Public Officials and Employment Practices Liability policy ("PO&EPL Policy") to Genesee County.  The insurance policy is subject to a $2,000,000 liability limit and a $350,000 retention.  Under the policy, Safety agreed to defend and indemnify Genesee County and its employees from covered claims alleging certain "wrongful acts."  The policy includes two exclusions, among others.  One precludes coverage for claims "[a]rising out of . . . [t]ax collection, or the improper administration of taxes or loss that reflects any tax obligation."  The second excludes claims "[a]rising out of eminent domain, condemnation, inverse condemnation, temporary or permanent taking, adverse possession, or dedication by adverse use."

Safety also issued Genesee County a separate Commercial General Liability ("CGL Policy") to cover liability for bodily injury and medical expenses, property damage, and "personal and advertising injury."

## C.  Procedural History

Genesee County claimed coverage from Safety for Fox's and Puchlak's lawsuits, which Safety denied.  Safety then filed a declaratory-judgment action in federal court against Genesee County, Fox, and Puchlak, seeking a ruling that, under its insurance policies, it owes no duty to defend Genesee County from the lawsuits or to indemnify it from any subsequent damages. Genesee County and Cherry counterclaimed, seeking both a declaration that they are covered under the policies and damages for a breach of contract based on Safety's refusal to defend them. The parties filed cross-motions for summary judgment, with Fox and Puchlak arguing separately that Safety lacked standing to sue them.

The district court granted two motions for summary judgment: Fox and Puchlak's motion against Safety, and Safety's motion against Genesee County. The court found no Article III case or controversy between Safety and Fox and Puchlak. The court acknowledged that much of the relevant caselaw suggests that, in coverage disputes, "the insurer typically has standing to pursue a declaration against the injured party." However, the court distinguished this case on the ground that, here, "the alleged wrongdoers are not the [County] Defendants but two nonparties—Gratiot County and St. Clair County." Fox and Puchlak had joined Genesee County in their lawsuits only for class-representation purposes. Noting the uncertainty of 1) whether Fox and Puchlak would prevail in their lawsuits and 2) what damages, if any, they could recover from Genesee County, the court found that no "substantial controversy" of "sufficient immediacy and reality" exists between Safety and Fox and Puchlak. Safety timely appealed.

The court also held that Safety owes Genesee County no duty to defend under either insurance policy. The court held that the CGL Policy does not cover the *Fox* and *Puchlak* lawsuits. The court also assumed that the PO&EPL Policy arguably covers the lawsuits and their indemnification but held that two of the policy's exclusions applied: one for claims arising out of tax collection, another for claims arising out of condemnation, inverse condemnation, or taking. Genesee County timely appealed.

## II. ANALYSIS

This court reviews de novo a district court's grant of summary judgment. *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 676 (6th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court does not weigh evidence but rather "view[s] [the evidence] in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). This standard does not change when the parties present cross-motions for summary judgment;

we evaluate each motion on its own merits.  *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

Below, we address Fox and Puchlak's summary-judgment motion against Safety, then turn to Safety's summary-judgment motion against Genesee County.

## A.  Article III Case or Controversy

### 1.  *Legal Framework*

The U.S. Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  Federal courts cannot issue advisory opinions. *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002).  Article III's case-or-controversy requirement allows federal courts to resolve concrete disputes, but prohibits them from passing "judgments on theoretical disputes that may or may not materialize."  *Saginaw County v. STAT Emergency Med. Servs. Inc.*, 946 F.3d 951, 954 (6th Cir. 2020) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–03 (1998)).

The Supreme Court has delineated these limits with a number of justiciability doctrines, including standing and ripeness. *See Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279–80 (6th Cir. 1997).  To have standing, plaintiffs "must allege (1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can redress."  *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992)). Plaintiffs "must show an imminent or actual injury before [entering] the federal courts."  *STAT Emergency*, 946 F.3d at 954.  They "cannot sue simply to avoid a '*possible* future injury.'"  *Id.* at 954–55 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  Suits based solely on the "mere risk of future harm" cannot establish an injury sufficient for standing. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021).  Moreover, a claim is not ripe if it turns on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992). "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review."  *Magaw*, 132 F.3d at 280.

The Declaratory Judgment Act "does not alter these rules or otherwise enable federal courts to deliver 'an expression of opinion' about the validity of laws." *STAT Emergency*, 946 F.3d at 954 (quoting *Muskrat v. United States*, 219 U.S. 346, 362 (1911)). The Act offers only an "alternative remedy—a declaratory judgment—for *existing* cases or controversies." *Ibid.* When a party sues for declaratory relief, "he must satisfy the prerequisites of the Declaratory Judgment Act and Article III's standing baseline." *Ibid.* In particular, he must show "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Ibid.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)); *see Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 971 (6th Cir. 2009) (explaining that a declaratory judgment must "affect[] the behavior of the defendant towards the plaintiff" (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987))). The difference between an abstract question and a controversy suitable for judgment is largely a one of degree. *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

### 2. *Analysis*

In pursuing its declaratory judgment, Safety seeks to redress possible injuries that could stem from an improper invocation of two of its duties as an insurer: the duty to defend and the duty to indemnify. *See Farmers & Merchants Mut. Fire Ins. Co. v. LeMire*, 434 N.W.2d 253, 255 (Mich. Ct. App. 1988). The former requires insurers to pay for the insured's legal counsel and litigation costs when the policy arguably covers the alleged liability; the latter requires them to pay the injured party any damages awarded against the insured for the covered loss. *Ibid.* With respect to Fox and Puchlak, each claim fails to satisfy the requirements of Article III and the Declaratory Judgment Act. The duty to defend is ripe for adjudication between Safety and Genesee County, but has little to do with Fox or Puchlak. The duty to indemnify, to the extent that it reflects a controversy between Safety and Fox and Puchlak, is not immediate enough to warrant declaratory judgment.

*Duty to Defend.* Safety cannot litigate its duty to defend against Fox and Puchlak because this duty does not involve them. The duty to defend is a "right affecting only the

obligations of the insurer vis-a-vis the insured." *Allstate Ins. Co. v. Wayne County*, 760 F.2d 689, 695 (6th Cir. 1985). Fox and Puchlak have not asked Safety to "prosecute or defend" them in any lawsuit. Safety can properly sue Genesee County over this duty, and did, but Fox and Puchlak have no stake in who wins that fight. To the extent that they have any interest in Safety's duty to defend Genesee County, it would seem to align with Safety's. Fox and Puchlak argue that they would "strategically prefer that there be <u>no</u> duty to defend" so that Genesee County would stop the "current foot-dragging in the [underlying] litigation." From its duty to defend Genesee County, then, Safety cannot allege an "injury in fact . . . traceable" to Fox and Puchlak's conduct. *Gerber*, 14 F.4th at 505 (citing *Lujan*, 504 U.S. at 559–61).

Safety rejects the district court's characterization of Fox and Puchlak as "complete strangers" to the coverage dispute between Safety and Genesee County. It asserts that, for Article III purposes, Fox and Puchlak are injured parties. We disagree. As discussed above, Fox and Puchlak are not signatories to the insurance contracts between Safety and Genesee County. Were we to declare a duty to defend Genesee County, that judgment would not affect the behavior of Fox and Puchlak towards Safety. *Friends of Tims Ford*, 585 F.3d at 971. While a dispute exists between Safety and Genesee County over Safety's duty to defend, it has no connection to Fox and Puchlak.

Safety argues that it included Fox and Puchlak in its lawsuit to avoid relitigating its coverage obligations. Michigan law, notes Safety, requires it to include all "interested parties" in a declaratory-judgment action. *See Cincinnati Ins. Co. v. Vill. Plaza Holdings, LLC*, 2020 WL 4200978, at *4 (E.D. Mich. July 22, 2020). Failing to add Fox and Puchlak means that any no-coverage judgment would lack preclusive effect against the other members of their putative classes. *See Allstate Ins. Co. v. Hayes*, 499 N.W.2d 743, 748 n.12 (Mich. 1993).

We share the district court's conclusion that Fox and Puchlak are not "interested parties" to whom Michigan law applies in this context. Even if Fox and Puchlak were interested parties, Safety's reliance on Michigan caselaw is misplaced. Those decisions concern the preclusive effect of a declaratory-judgment action; they do not speak to federal courts' jurisdiction over the parties in these actions. While *Hayes* may explain Safety's interest in joining Fox and Puchlak

as parties to its lawsuit, it does not grant this court the jurisdiction to hear the dispute between them.  No doubt Safety has strong reasons for seeking finality from a binding judgment against Fox, Puchlak, and their respective classes.  But the "practical value" of its action "cannot overcome" Article III's requirements.  *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201 (4th Cir. 2019).

*Duty to Indemnify.*  Even if Safety could seek declaratory relief against Fox and Puchlak over its duty to indemnify, ripeness would keep us from adjudicating this dispute.  Fox's and Puchlak's lawsuits are both pending.  For Safety to indemnify Fox and Puchlak, several events must occur.  First, Fox and Puchlak must secure judgments against Genesee County.  Second, Fox and Puchlak must establish damages against Genesee County; merely winning their claim or establishing damages against other counties is not enough.  Even then, Genesee County must refuse, or declare itself unable, to satisfy any judgment before Fox and Puchlak could ask Safety to pay them for their injuries.  Although our recent decision in *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022), may signal merit to Fox's and Puchlak's lawsuits, the strength of their underlying claims is but one link in a chain of "contingent future events" that illustrates how resolving Safety's duty to pay them damages would prove a costly and time-consuming hypothetical. *Trump*, 141 S. Ct. at 535.

Safety argues that the Supreme Court's decision in *Maryland Casualty* demands a contrary holding.  There, an insurer sued an insured and the injured party for a declaratory judgment that it had no duty to defend or indemnify the insured for the injured party's pending lawsuit in state court.  *Maryland Cas.*, 312 U.S. at 271–72.  The Court held that a "substantial controversy" of "sufficient immediacy and reality" existed under the Declaratory Judgment Act. *Id.* at 273.

On its face, *Maryland Casualty* would seem to govern this case.  The *Maryland Casualty* Court rested its holding on three factors: Ohio law allowed the injured party to proceed against the insurer to satisfy any final judgment unpaid by the insured party after thirty days; the injured party could prevent the policy from lapsing by performing its notice conditions; and different courts could reach conflicting interpretations of the policy.  *Id.* at 273–74.  Here, Michigan law

would allow Fox and Puchlak to proceed against Safety to satisfy an unpaid judgment against Genesee County.  Mich. Comp. L. § 500.3006.  The PO&EPL Policy suggests that Fox and Puchlak do not need to prevent its lapse before collecting on a judgment.  And Puchlak's lawsuit awaits resolution in a state court, which could eventually reach an opposite interpretation of Genesee County's PO&EPL Policy.

However, unlike the insured party in *Maryland Casualty*, Genesee County is not the "alleged tortfeasor" that supposedly injured Fox and Puchlak.  That distinction belongs to two nonparties, Gratiot County and St. Clair County, where Fox and Puchlak live.  Even though the Sixth Circuit has previously allowed an insurer to bring a declaratory-judgment action against both the insured and injured parties, it has recognized that often the "real dispute is between the injured third party and the insurance company, not between the injured and an often-times impecunious insured." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1064 (6th Cir. 1987) (citing 6A Moore's Federal Practice ¶ 57.19 (2d ed. 1983)); *see ibid.* (citing *Maryland Cas.*, 312 U.S. at 274).  Here, no real dispute exists—at least, for now—between Safety and Fox and Puchlak.  The possibility that Fox and Puchlak might look to Safety for indemnification is more attenuated than it was for the parties in *Maryland Casualty*.  Fox and Puchlak have not asked Safety to pay them for their injuries.  As the district court noted, "[b]y all appearances, [Fox and Puchlak] joined [Genesee County] in the underlying lawsuits for class-representation purposes only."  Safety cannot derive from this arrangement a dispute with Fox and Puchlak, who, as the purportedly injured parties, are adverse to Genesee County "only insofar as they have different stakes in the outcome of the underlying lawsuits."  Even if Fox and Puchlak prevail in their lawsuits, Genesee County might not be held liable for damages.  While ripeness is largely a question of degree, *Maryland Cas.*, 312 U.S. at 273, we require more certainty of the necessity of indemnification before allowing Safety to hale Fox and Puchlak into federal court.

Safety also contends that this case is ripe under Sixth Circuit precedent.  The Sixth Circuit considers several factors when deciding whether the issues presented are ripe for review. *United Steelworkers of America, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988).  First is the hardship that "refusing to consider [Safety's] prospective claims would impose upon the parties." *Id.* at 195.  Second is the likelihood that the harm alleged by Safety

"will ever come to pass." *Id.* at 194. Third is whether the factual record is developed enough for a fair adjudication on the merits of the parties' claims. *Id.* at 195. Safety argues that each of these factors tilts towards ripeness.

We disagree. On the first factor, Safety argues that "insulat[ing] Fox and Puchlak (and the class members they represent)" from a coverage determination would leave Safety vulnerable to "multiple declaratory judgment actions" from Fox's and Puchlak's class members and expose it to the risk of "inconsistent coverage rulings." Had Safety sought its judgment in state court, it may have been able to join Fox and Puchlak as parties and secure a binding judgment without running into the limits of Article III. On the second factor, Safety notes that Fox and Puchlak have filed class-action lawsuits, for which Genesee County claims coverage and seeks an immediate defense from Safety. As discussed above, to the extent that the duty to defend reflects immediate harm, it does not involve Fox and Puchlak. Meanwhile, harm from Safety's duty to indemnify is less likely to occur. Fox and Puchlak must prevail in their lawsuits against Genesee County; Genesee County must be held liable to them for damages; and Genesee County must prove unwilling or unable to satisfy any judgment before Fox and Puchlak can ask Safety to indemnify them. On the third factor, Safety argues that the factual record is sufficiently developed and that Fox and Puchlak had an opportunity to weigh in. We agree with Safety on this point. On balance, however, Safety's duty to indemnify is not ripe for adjudication between Safety and Fox and Puchlak.

Because Safety lacks standing to sue Fox and Puchlak over its duty to defend and its claim for the duty to indemnify lacks ripeness, we affirm the district court's holding that no substantial controversy of sufficient immediacy and reality exists between Safety and Fox and Puchlak.

## B. The PO&EPL Policy Exclusions

### 1. *Interpretation of Insurance Contracts Under Michigan Law*

We focus here on the insurer's duty to defend, which is broader under Michigan law than its duty to indemnify. *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996). If the allegations of a third party against an insured party "even arguably come

within the policy coverage, the insurer must provide a defense . . . even where the claim may be groundless or frivolous." *Ibid.* Even if a policy excludes some claims, the duty to defend applies "if there are any theories of recovery that fall within the policy." *Protective Nat'l Ins. Co. v. City of Woodhaven*, 476 N.W.2d 374, 376 (Mich. 1991) (quoting *Detroit Edison Co. v. Mich. Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1981)). But "the duty to defend is not an unlimited one," and insurers are not required to defend "against claims for damage expressly excluded from policy coverage." *Meridian Mut. Ins. Co. v. Hunt*, 425 N.W.2d 111, 114 (Mich. Ct. App. 1988).

In Michigan, the interpretation of an insurance policy is a question of law that a court can resolve at summary judgment. *See Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 595 (6th Cir. 2001). The court interprets insurance contracts in two steps: it first determines coverage under the general insurance agreement, then it decides whether an exclusion applies to negate coverage. *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997).

While the burden of proving coverage rests on the insured party, the insurer bears the burden of proving that an exclusion precludes coverage. *See Pioneer State Mut. Ins. Co. v. Dells*, 836 N.W.2d 257, 263 (Mich. Ct. App. 2013); *Am. Tooling Ctr., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 895 F.3d 455, 459 (6th Cir. 2018) (applying Michigan law). Under Michigan law, we read an exclusion independently of other exclusions. *Farm Bureau Mut. Ins. Co. v. Blood*, 583 N.W.2d 476, 478 (Mich. Ct. App. 1998). Although exclusions are "strictly construed in favor of the insured . . . [c]lear and specific exclusions must be given effect." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992). Courts must give policy provisions their "plain and ordinary meaning" to avoid "technical and strained constructions." *Ann Arbor Pub. Schs. v. Diamond State Ins. Co.*, 236 F. App'x 163, 166 (6th Cir. 2007) (quoting *Century Sur. Co. v. Charron*, 583 N.W.2d 486, 488 (Mich. Ct. App. 1998)).

*2. Analysis*

Assuming, as the district court did, that the PO&EPL Policy would otherwise cover the *Fox* and *Puchlak* lawsuits, we hold that at least one exclusion negates coverage. The PO&EPL

Policy contains thirty-one exclusions, and Safety relies on six. Of those, the district court addressed the two "most fitting" exclusions—Exclusions 9B and 12—holding that either was sufficient to deny coverage. While Exclusion 12 may present a close case, Exclusion 9B does not; it excludes coverage of the *Fox* and *Puchlak* lawsuits.

Exclusion 9B excludes claims "[a]rising out of . . . [t]ax collection, or the improper administration of taxes or loss that reflects any tax obligation." The first issue is the meaning of the phrase "arising out of." In the insurance-contract context, the Michigan Supreme Court has held that the phrase "requires a 'causal connection' that is 'more than incidental.'" *People v. Johnson*, 712 N.W.2d 703, 706 (Mich. 2006) (quoting *Pac. Emps. Ins. Co. v. Mich. Mut. Ins. Co.*, 549 N.W.2d 872, 875 (Mich. 1996)). Applying Michigan law, we understand "arising out of" to mean something that "springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the [underlying] event." *Ibid.* The language demands more than a "but-for causal connection, but does not require direct or proximate causation." *Great Am. Fid. Ins. Co. v. Stout Risius Ross, Inc.*, 438 F. Supp. 3d 779, 785 (E.D. Mich. 2020) (quoting *Scott v. State Farm Mut. Auto. Ins. Co.*, 751 N.W.2d 51, 56 (Mich. Ct. App. 2008)).

The claims in the *Fox* and *Puchlak* lawsuits are excluded from coverage because they arise out of tax collection. The Michigan Supreme Court's recent case in *Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434 (Mich. 2020), illustrates the cause-and-effect relationship between tax collection and the alleged withholding of surplus proceeds at issue in the *Fox* and *Puchlak* lawsuits. The court summarized the practice by which counties, under Michigan's General Property Tax Act ("GPTA"), Mich. Comp. Laws § 211.1 *et seq.*, retained surplus proceeds from the tax-foreclosure sales of private property. *Rafaeli*, 952 N.W.2d at 443–46. Real-property taxes are first assessed and collected by the municipality where the property is located. *Id.* at 443. When property taxes become delinquent, "collection is turned over to the foreclosing governmental unit," usually the county, whose treasurer attempts to collect the delinquent taxes by seeking to foreclose on the associated property and then sell it at a public auction. *Id.* at 443–44. Upon sale, the county treasurer deposits the proceeds into an account containing the proceeds from all of the county's delinquent-tax property sales for that year. *Id.* at

445. Where the proceeds from individual sales exceed the tax delinquency, the surplus is first used to offset the costs of the county's foreclosure proceedings and sales. *Id.* at 446. Any leftover money may then be transferred to the county's general fund. *Ibid.* The Michigan Supreme Court stressed that "the GPTA does not provide for any disbursement of the surplus proceeds to the former property owner" but rather "requires the foreclosing governmental unit to disperse the surplus proceeds to someone other than the former owner." *Ibid.* (citing Jenna Christine Foos, Comment, *State Theft In Real Property Tax Foreclosure Procedures*, 54 Real Prop. Tr. & Est. L.J. 93, 101–02 & n.56 (2019)).

The overview in *Rafaeli* confirms that the process of tax collection is what causes Fox's and Puchlak's claims—the retention of their surplus tax-auction proceeds—to occur. *Great Am. Fid. Ins. Co.*, 438 F. Supp. 3d at 785. The underlying conduct at issue in the *Fox* and *Puchlak* lawsuits—that the defendant counties retained too much money from the sale of property at tax-delinquency auctions—"springs from" tax collection, if it is not substantively an act of tax collection itself. *Johnson*, 712 N.W.2d at 706. In other words, a "cause and effect relationship" exists between the counties' method of property-tax collection and the injury for which Fox and Puchlak seek to recover. *Ibid.* Therefore, Exclusion 9B precludes coverage for these claims.

Genesee County argues for a narrow construction of "tax collection" that renders the exclusion inapplicable. Genesee County contends that the "process of 'collection' could *reasonably be understood* as not including the post-foreclosure decision to retain funds *previously collected*." They characterize this case as involving "what happens <u>*after*</u> the taxation process is completed." We disagree. The post-foreclosure retention of funds previously collected cannot reasonably be understood as a separate decision that counties or their treasurers make. As the Michigan Supreme Court describes, the GPTA contains an "exhaustive" reimbursement scheme that dictates where delinquent-tax property-sale proceeds must go. *Rafaeli*, 952 N.W.2d at 446. The retention of surplus proceeds is part of the multi-step process that is "tax collection," as established by the GPTA, rather than a separate and independent decision.

Even if we accepted Genesee County's point that the allegedly withheld surplus proceeds are not tax revenues, claims based on the failure to return those sums would still fall under the exclusion. Construing "tax collection" narrowly to refer only to the gathering of taxes owed does not affect the exclusion's "arising out of" language, which sweeps in the complained-of activity. Whether or not surplus proceeds amount to tax revenue, their retention directly resulted from—and was part of—the tax-collection process outlined by the GPTA.

Genesee County also argues that, even if Exclusion 9B precludes claims arising out of tax collection, it does not apply to other damages claims asserted in the underlying lawsuits. *See City of Woodhaven*, 476 N.W.2d at 376 (noting that an insurer must defend against a lawsuit "if there are any theories of recovery that fall within the policy" (quoting *Detroit Edison*, 301 N.W.2d at 835)). Genesee County asserts that Fox and Puchlak "allegedly 'suffered two kinds of' damages: those arising from the retention of the excess funds and those arising from the claimed due process violations." To support the premise that the latter claims are not claims arising out of tax collection to which the exclusion would apply, Genesee County relies on *Assurance Co. of America v. J.P. Structures, Inc.*, 1997 WL 764498 (6th Cir. Dec. 3, 1997). There, the court held that an insurance-coverage exclusion for claims arising out of a breach of contract did not preclude coverage for a trademark-infringement claim. *See id.* at *5. As Genesee County sees it, the *J.P. Structures* court reached its holding because the underlying claimant's trademark-infringement claim was "of a different character" than its breach-of-contract claim. Because claims arising from the retention of excess funds are of a different character than claims for violations of due process and claims for excessive fines, Genesee County would have us similarly recognize, and require the defense of, those other claims that do not implicate a given exclusion.

We read *J.P. Structures* differently. The court's decision focused on the lack of a causal relationship between the two claims, not on whether the claims were different. It noted that the insured party's "breach of the contract caused its termination" while its "intentional unauthorized use of the mark caused the trademark infringement." *Ibid.* The only connection between the contract breach and the trademark infringement was that the post-breach termination of the contract "withdrew the authorization to use" the trademark, a connection that the court found

"too remote." *Ibid.* In our case, however, the causal link between the excluded conduct—tax collection—and the subsequent claims is more direct. As the district court put it, "all 11 counts across both complaints rely on the same allegation: that county governments seized tax-delinquent property, sold it at auction, and kept the surplus proceeds." We agree with Genesee County that an insurer must prove more than but-for causation when construing "arising out of" language in an exclusion. *Stout Risius Ross, Inc.*, 438 F. Supp. 3d at 785. But that higher standard is met here, where the alleged tax-collection process directly caused the injuries underlying each of Fox's and Puchlak's claims.

Because one exclusion—Exclusion 9B—is enough to deny coverage, we affirm.

### III.  CONCLUSION

For the reasons above, we affirm the district court's grant of summary judgment to Fox and Puchlak against Safety, and its grant of summary judgment to Safety against Genesee County.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 22-1189/1196

SAFETY SPECIALTY INSURANCE COMPANY; SAFETY
NATIONAL CASUALTY COMPANY,

     Plaintiffs - Appellees (22-1189),
     Plaintiffs - Appellants (22-1196),

     v.

GENESEE COUNTY BOARD OF COMMISSIONERS; DEBORAH CHERRY,

     Defendants - Appellants (22-1189),

THOMAS A. FOX; TAMMY PUCHLAK, as Trustee of the
Walter Puchlak Revocable Trust Agreement dated February
24, 2010,

     Defendants - Appellees (22-1196).

> **FILED**
> Nov 21, 2022
> DEBORAH S. HUNT, Clerk

Before: SUTTON, Chief Judge; BOGGS and KETHLEDGE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is
AFFIRMED in its entirety.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk